# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMES OLDHAM** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-12-2432** |
| | § | |
| **THOMPSON/CENTER ARMS** | § | |
| **COMPANY, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Thompson/Center Arms Company, Inc.'s ("Thompson" or "Defendant") Partial Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion").  (Doc. No. 29.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Defendant's Motion should be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

On December 28, 2011, James Oldham's ("Oldham" or "Plaintiff") rifle unexpectedly discharged while he was hunting.  (Doc. No. 27, Second Am. Compl. ("Compl.") ¶ 9.)  As a result of the incident, Oldham is completely and permanently deaf in his left ear.  (*Id.*)  He now brings suit against the manufacturer of that rifle.

Oldham, an avid hunter, obtained the rifle in question from Thompson when the muzzle loader on his prior rifle, which he also obtained from Thompson, had split.  (*Id.* ¶ 4.)  Thompson agreed to provide Plaintiff an ICON medium bolt 30TC caliber action rifle, which it sent to a local gun dealer, Northwest Pawn ("Northwest"), on May 28, 2010.  (*Id.* ¶¶ 4–5.)  Northwest

---

[1] The allegations contained in Plaintiff's Second Amended Complaint (Doc. No. 27) are accepted as true for purposes of the pending motion.

Pawn opened the package, located certain identifying information, and entered that information into its computer system, in compliance with federal firearm regulations.  (*Id.*)  Northwest never disassembled or in any way modified the rifle.  (*Id.* ¶ 6.)  After locating and recording the required information, Northwest resealed the rifle and stored it until Plaintiff came to pick it up. (*Id.* ¶¶ 5–6.)

Plaintiff retrieved the rifle on June 2, 2010.  (*Id.* ¶ 6.)  Shortly after receiving the rifle from Northwest, and before ever firing the rifle, Oldham took the rifle to a local Gander Mountain ("Gander") store, so that a gunsmith could install a muzzle break and reduce the recoil of the rifle.  (*Id.* ¶ 7.)  The gunsmith removed the buttstock from the rifle, shortened the stock, and installed a recoil pad.  (*Id.*)  He then cut, crowned, and threaded the rifle's barrel and installed a muzzle break.  (*Id.*)  Subsequently, the rifle was reassembled and test fired for function and safety.  (*Id.*)  The gunsmith did no other work on the rifle; specifically, Plaintiff alleges he did nothing that would have affected the functioning of the trigger or safety mechanisms.  (*Id.*)  After this work was completed, Oldham was advised that the rifle was ready for pick up.  (*Id.*)

Between his retrieval of the gun from Gander and the incident that forms the subject of this lawsuit, Plaintiff fired the rifle about twenty times.  (*Id.* ¶ 8.)  While hunting on December 28, 2011, Plaintiff loaded a shell into the rifle and engaged the safety mechanism.  (*Id.* ¶ 9.) Immediately after Oldham engaged the safety mechanism, the rifle unexpectedly discharged near his left ear, leaving him permanently and completely deaf in that ear.  (*Id.*)  After the incident, Thompson inspected the rifle and determined that the rifle was missing a rear trigger housing pin, which affected the function of its trigger and safety mechanisms.  (*Id.* ¶ 10.)

Plaintiff contends that, because Thompson, Northwest, Gander and Plaintiff were the only parties to ever possess the rifle, and because Northwest, Gander, and Plaintiff never removed the rear trigger housing pin, Thompson must have shipped the rifle in this dangerous condition.  (*Id.* ¶ 11.)  Plaintiff alleges that Defendant is liable under strict liability, negligence, and breach of implied warranty of merchantability theories.  (*Id.* ¶¶ 12–17.)  Defendant argues that Plaintiff's strict liability cause of action must be dismissed in part, and Plaintiff's negligence and breach of implied warranty of merchantability must be dismissed in whole.  (*See generally* Mot.)

## II.    LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Twombly*, 550 U.S. at 556 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.").  That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but

must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678.

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656 (S.D. Tex. 2010).

The Federal Rules of Civil Procedure provide that "leave (to amend the complaint) shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[G]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a

claim." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (citation omitted).   The Court should generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id*.

## III.    ANALYSIS

### A.    Strict Liability

Plaintiff contends Thompson is strictly liable for the injuries he suffered because the ICON medium bolt 30TC caliber action rifle was "defectively manufactured and/or marketed." (Compl. ¶ 13.)  Plaintiff's Response to Defendant's Motion clarifies that the alleged marketing defect complained of is a failure by Thompson to include a warning that the rifle was missing a safety mechanism, namely a rear trigger housing pin.  (Doc. No. 32, Resp. at 6.)  Defendant argues that Plaintiff's strict liability cause of action premised on a marketing defect cannot survive because, based on the facts Plaintiff pled, the rifle was unreasonably dangerous due to a manufacturing defect and not because of a failure to warn.  (Mot. at 7–9.)

A defendant can be held strictly liable for products sold "in a defective condition *unreasonably* dangerous to the user or consumer." *Caterpillar v. Shears*, 911 S.W.2d 379, 381–82 (Tex. 1995) (emphasis in original); *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 426 (Tex. 1997).  To prevail under the theory of strict liability, a plaintiff must establish "(1) the defective and unreasonably dangerous condition of the defendant's product; and (2) a causal connection between such condition and the plaintiff's injuries or damages." *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907, 914 (S.D. Tex. 2005) (citing *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 377 (Tex. 1984).  "A product may be unreasonably dangerous because of

a defect in manufacturing, design, or marketing." *Caterpillar*, 911 S.W.2d at 382 (citing *Turner v. Gen. Motors Corp.*, 584 S.W.2d 844, 847 (Tex. 1979)); *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 878 (Tex. App.—Fort Worth 2002, no pet.)  "A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect." *Caterpillar*, 911 S.W.2d at 382 (citing *Lucas*, 696 S.W.2d at 377).

A marketing defect claim must include the following five elements:

1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; 2) the product supplier must actually know or reasonably foresee the risk of harm at the time the product is marketed; 3) the product must possess a marketing defect; 4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and 5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury.

*Gerber*, 392 F. Supp. 2d at 914–15 (citing *USX v. Salinas*, 818 S.W.2d 473, 482–83 (Tex. App.—San Antonio 1991, writ denied)); *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir. 2001).  "Liability will attach if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous." *Caterpillar*, 911 S.W.2d at 382 (citing *Lucas*, 696 S.W.2d at 377); *McLennan*, 245 F.3d at 427 (citing *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 549-50 (Tex. App.—San Antonio 2001, no writ)).

Plaintiff's strict liability cause of action premised on a marketing defect must be dismissed.  Plaintiff's own pleadings indicate that the flaw in the rifle was a missing trigger pin, which caused the rifle's safety mechanism to fail.  If true, this allegation necessarily shows that the rifle is not "an otherwise adequate product."  *See Caterpillar*, 911 S.W.2d at 382.  No warning would render a rifle that unexpectedly discharges while the safety mechanism is engaged "adequate."  Put another way, the failure to warn of the malfunctioning safety mechanism is not what renders the rifle unreasonably dangerous; it is the existence of the alleged

6

manufacturing defect that renders the rifle unreasonably dangerous.  *Gerber*, 392 F. Supp. 2d at 914–15.  The Court is aware of no case law, and Plaintiff has cited none, indicating that a defendant can be held strictly liable for failing to warn of the existence of a manufacturing defect.  *Cf. Salinas*, 818 S.W.2d at 477 (recognizing that plaintiffs could proceed on a theory that defendants were strictly liable for their failure to warn that certain physical manifestations of a manufacturing defect in rig elevator indicated possibility of elevator collapse).

Furthermore, Plaintiff's strict liability cause of action premised on a marketing defect must also fail because Plaintiff has pled no facts indicating that Defendant actually knew or could reasonably foresee the risk of harm at the time the rifle was marketed.  *Gerber*, 392 F. Supp. 2d at 914–15; *Salinas*, 818 S.W.2d at 483–84; *Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1145 (5th Cir. 1985).  Plaintiff has pled no facts to indicate that Defendant knew, or could reasonably foresee, at the time of marketing, that the rifle had a malfunctioning safety mechanism.  While there is always the possibility that a product may have a manufacturing defect, "the law does not require that every product state that there is a possibility that the product will not function properly."  *Sipes v. Gen. Motors Corp.*, 946 S.W.2d 143, 157 (Tex. App.—Texarkana 1997, writ denied).

Because Texas case law does not support Plaintiff's theory of liability premised on failure to warn of a manufacturing defect, Plaintiff's strict liability cause of action premised on this failure to warn is dismissed with prejudice.  If Plaintiff can allege that there were physical signs that the safety mechanism on the rifle was defective, and that Defendant knew or could reasonably foresee that such physical manifestations were indicative of possible unexpected discharges, Plaintiff may be able to state a strict liability marketing defect claim.  *See Salinas*,

818 S.W.2d at 477.  If Plaintiff wishes to add such a claim, he has thirty days to file an amended complaint.

### B.    Negligence

#### 1.    Overlap between strict liability and negligence

Plaintiff next contends that his injuries were proximately caused by the negligent actions or omissions of Defendant in failing to exercise ordinary care in the manufacture or marketing of the rifle.  (Compl. ¶ 15.)  Defendant argues that this allegation is based entirely on the rifle being unreasonably dangerous, and is therefore subsumed into Plaintiff's strict liability claim.  (Mot. at 19.)  Plaintiff responds that his negligence claim is not based entirely on his allegation that the rifle was unreasonably dangerous due to a manufacturing defect.  (Resp. at 7–8.)  However, upon reviewing Plaintiff's Second Amended Complaint, the Court cannot see what other basis there can be for Plaintiff's negligence claim.  Plaintiff contends that it "may well be that the failure of the rifle's trigger and safety mechanisms to properly function resulted from some other act of negligence . . . separate and distinct from Thompson['s] manufacturing process."  (Resp. at 8.)  However, Plaintiff has pled no facts indicating a separate basis for his negligence claim.  For the purposes of deciding Defendant's Motion, the Court understands Plaintiff's negligence claim to be premised on the same manufacturing defect that forms the basis of Plaintiff's strict liability claim.

"Traditionally in Texas law, negligence and strict liability have been distinct causes of action."  *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied) (citing *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)).  To prevail on a strict liability cause of action, a plaintiff must show that: "(1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer

without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." *Syrie v. Knoll Int'l*, 748 F.2d 304, 306 (5th Cir. 1984).  To prevail on a negligence cause of action, a plaintiff must show "(1) the existence of a duty on the part of one party to another; (2) the breach of that duty; and (3) the injury to the person to whom the duty is owed as a proximate result of the breach." *Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 807 (S.D. Tex. 2011) (citing *Dion v. Ford Motor Company*, 804 S.W.2d 302, 310 (Tex. App.—Eastland 1991, writ denied)).  The Fifth Circuit and the Texas Supreme Court have summarized the difference between the two causes of action in the context of product liability as follows:

> The care taken by the supplier of a product in its preparation, manufacture, or sale is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

*Syrie*, 748 F.3d at 307 (citing *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871 (Tex. 1978)).

The Fifth Circuit has recognized that, where the negligence cause of action is premised only on allegations and evidence directed to whether the product is unreasonably dangerous, failure to prevail on a strict liability cause of action necessarily dooms the negligence cause of action as well.  *See Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 256–57 (5th Cir. 1988) (explaining that "(1) to find against plaintiff on strict liability, the jury had to find either no defect or that the defect did not proximately cause injury, (2) that defect and proximate cause are necessary elements in a negligence claim, and, therefore, (3) that the jury's rejection of the strict liability claim necessarily constituted a rejection of at least one essential element of the negligence claim"); *see also Kallassy v. Cirrus Design Corp.*, No. Civ.A. 3:04-CV-0727N, 2006

WL 1489248, at *4–5 (N.D. Tex. May 30, 2006) (recognizing that "it is not logical for a manufacturer to be held liable for failing to exercise ordinary care when producing a product that is not defective because: (1) if a product is not unreasonably dangerous because of the way it was manufactured, it was not negligent to manufacture it that way; and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product 'unreasonably dangerous'" (quoting *Garrett*, 850 F.2d at 257)); *Miles*, 141 S.W.3d at 315 (same).  However, Texas law also makes clear that, "[w]hen a trial court is confronted with several theories of recovery, the court must submit a charge to the jury with all questions, instructions, and definitions raised by the pleadings and evidence."  *Miles*, 141 S.W.3d at 315; *General Motors Corp. v. Paiz*, No. 05–98–01340–CV, 2000 WL 1751096, at *3 (Tex. App.—Dallas 2000, no pet.) (not designated for publication); *cf. Garrett*, 850 F.2d at 257 (recognizing that failure to submit instruction on negligence in addition to strict liability was harmless error).  Thus, this Court does not understand *Garrett*, or the numerous other Texas cases which recognize that failure to prevail on strict liability necessarily renders unviable a negligence claim premised on the same defect, to mandate dismissal of the negligence claim.  Rather, these cases indicate that Texas law recognizes both theories, but a court's refusal to ultimately submit duplicative and confusing instructions to a jury will be considered harmless error.[2]

    The Court therefore declines to dismiss Plaintiff's negligence cause of action simply because it is based on the same manufacturing defect that forms the basis of Plaintiff's strict

---

[2] Defendant does cite one district court case that appears to dismiss a plaintiff's negligence claims merely because they are subsumed into his strict liability claims.  *See Romo*, 798 F. Supp. 2d at 807–808.  *Romo* relies on *Garrett* and *Kallassy* for its conclusion.  *Id.* (citing *Kallassy*, 2006 WL 1489248, at *4; *Garrett*, 850 F.2d at 257).  Neither case, however, stands for the proposition that a plaintiff's well-pled negligence theory can be dismissed because it is subsumed by a strict liability claim.  Rather, both cases provide that where a strict liability claim fails, a negligence claim premised on the same defect also necessarily fails.  *Kallassy*, 2006 WL 1489248, at *4; *Garrett*, 850 F.2d at 257.  Accordingly, this Court declines to follow *Romo*.

liability cause of action.  The Court notes, however, that the development of strict liability appears to have eliminated the need for plaintiffs to proceed on the more demanding theory of negligence, which requires either identifying a negligent act or relying on *res ipsa loquitor*.  *See Garrett*, 850 F.2d at 258 (citing W. Page Keeton, *Prosser and Keeton on Law of Torts* § 99 (5th ed. 1984)).  Indeed, the Court can see little advantage to Plaintiff's proceeding on both theories when the negligence claim is predicated on the same defect as the strict liability claim.  Much harm, however, can come from proceeding on both theories: "an irreconcilable conflict can occur from the submission of these theories [to a jury] when the concept of defect at issue in the theories submitted is functionally identical and the resolution of the defect issue involves factually identical determinations."  *See Paiz*, 2000 WL 1751096, at *3, 5 (reversing judgment when jury found in favor of plaintiff on negligence theory and in favor of defendant on strict liability where claims were premised on same alleged defect); *Miles*, 141 S.W.3d at 315, 319 (same).

### 2. *Res ipsa loquitor*

In addition to claiming that Defendant's negligent acts or omissions proximately caused his injury, Plaintiff pleads, in the alternative, a negligence claim premised on *res ipsa loquitor*. (Compl. ¶ 15.)   Defendant argues that Plaintiff cannot plead facts that would allow the application of *res ipsa loquitor*.  (Mot. at 12.)

*Res ipsa loquitor* is not a separate cause of action from negligence.  *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982).  Rather, "[t]he purpose of *res ipsa* is to relieve the plaintiff of the burden of proving a specific act of negligence by the defendant when it is impossible for the plaintiff to determine the sequence of events, or when the defendant has superior knowledge or means of information to determine the cause of the accident."  *Id.*

(citations omitted).  "The doctrine of *res ipsa loquitur* is applicable only when: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to be under the management and control of the defendant."  *Id.* (citations omitted); *Parsons v. Ford Motor Co.*, 85 S.W.3d 323, 332 (Tex. App.—Austin 2002, pet. denied).

Here, Plaintiff cannot proceed on a *res ipsa loquitor* theory because the facts he has pled reveal that the rifle in question was not under the control and management of Defendant.  The facts pled indicate that the gun was held for a period of time by Northwest, and then by Gander.  (Compl. ¶¶ 4–7.)  The gunsmith at Gander performed work on the gun, altering certain parts.  (*Id.* ¶ 7.)  Thereafter, it was in Plaintiff's control for over a year.  (*Id.* ¶¶ 8–9.)  Such a lengthy period during which the instrumentality was not in the control of Defendant necessarily deprives Plaintiff of any *res ipsa loquitor* presumption.  *Parsons*, 85 S.W.3d at 332–33 (finding plaintiffs were not entitled to a *res ipsa loquitur* presumption because they could not show that "the car (or at least the ignition switch) was unaltered since the time it left Ford's control at the initial sale"); *Hernandez v. Nissan Motor Corp.,* 740 S.W.2d 894 (Tex. App.—El Paso 1987, writ denied) (finding *res ipsa loquitor* inapplicable when the instrumentality was under the control of plaintiff for at least ten days before the accident at issue occurred); *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 742–43 (Tex. App.—Amarillo 1999, pet. denied) (collecting cases holding that, where other parties besides the defendant control instrumentality at the time of the accident, *res ipsa loquitor* is inapplicable).  Based on the facts pled, it would be futile to allow Plaintiff leave to amend to plead a negligence claim premised on manufacturing defect that relies on *res ipsa loquitor*.  *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (holding that denial of leave to amend may be appropriate when amendment would be futile); *Stripling v.*

*Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted.").

### C.    Breach of Implied Warranty of Merchantability

Plaintiff's final cause of action is a breach of implied warranty of merchantability. (Compl. ¶ 17.)  Defendant argues that Plaintiff has not stated a claim upon which relief can be granted because he has not pled he is a buyer or that Defendant sold or leased the rifle to in question to him.  (Mot. at 12–13.)  Plaintiff responds that there is no requirement that Defendant sell the rifle, or that Plaintiff be a buyer.  (Resp. at 8–9.)

Plaintiff's argument that Texas law does not require Defendant to sell or lease the allegedly unmerchantable good is meritless.  "The elements of a cause of action for breach of the implied warranty of merchantability are: (1) *the defendant sold or leased a product to the plaintiff;* (2) the product was unmerchantable; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury."  *Polaris Indus., Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App.—Tyler 2003) (emphasis added) (citing Tex. Bus. & Commerce Code. Ann. §§ 2.314, 2.607(c)(1), 2.714, 2.715 (1994)).  Plaintiff argues that *Polaris* was never appealed, has not been cited for its requirement that defendant sell or lease a product to plaintiff, and has no support in the statutory language.  (Resp. at 9.)  These arguments are unavailing.  The Fifth Circuit has summarized a federal court's obligations when adjudicating state law claims as follows:

> When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court.  If the state's highest court has not spoken on the particular issue, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide. When making such an *Erie* guess, we are bound by an intermediate state appellate court decision unless convinced by other persuasive data that the highest court of the state would decide otherwise.

*Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citations and quotation marks omitted).  The Court is aware of no persuasive data suggesting that the Texas Supreme Court would not adopt the requirement of sale enunciated by the *Polaris* court.  Indeed, the Texas Supreme Court has at least implicitly approved of the *Polaris* court's enunciation of the elements of a breach of implied warranty of merchantability.  *See Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 867–68 (Tex. 2007) (citing *Polaris*, 119 S.W.3d at 336).  Furthermore, the Court is aware of numerous federal district court decisions relying on *Polaris* for the elements of a breach of implied warranty of merchantability.  *See, e.g.*, *Eckhardt v. Qualitest Pharms., Inc.*, 889 F. Supp. 2d 901, 908 n.48 (S.D. Tex. 2012); *Helen of Troy, L.P. v. Zotos Corp.*, 511 F. Supp. 2d 703, 724 (W.D. Tex. 2006); *Duran v. City of Eagle Pass, Tex.*, No. SA–10–CV–504–XR, 2012 WL 1593185, at *2 (W.D. Tex. May 3, 2012); *Woodhouse v. Sanofi-Aventis U.S. LLC*, No. EP–11–CV–113–PRM, 2011 WL 3666595, at *4 (W.D. Tex. June 23, 2011).  Accordingly, this Court finds that a sale or a lease is required to state a claim for breach of implied warranty of merchantability.

However, the Court does not find that this conclusion necessarily dooms Plaintiff's breach of implied warranty of merchantability claim.  The parties have not provided any case law, and this Court could find no case law, discussing whether a product supplied as a replacement for a purchased product can be considered a part of the original sale.  Logic would suggest that when a company sells a defective product and then provides a replacement for that defective product, the replacement should be considered part of the original sale, and the customer should be considered a buyer; after all, the replacement was clearly provided in recognition of the fact that the customer did not receive what he paid for the first time.  Accordingly, if Plaintiff is able to plead that the gun at issue was provided by Defendant to

replace a gun Plaintiff had previously purchased from Defendant, that ought to be sufficient to state a claim for breach of implied warranty of merchantability.[3]  Plaintiff has thirty days to file an amended complaint.  If Defendant is aware of case law holding that supplying a product to replace a previously sold product does not constitute a sale, Defendant may provide such case law in a subsequent motion.

## IV.    CONCLUSION

Based on the foregoing, Defendant's Partial Motion to Dismiss (Doc. No. 29) is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Defendant's Motion is granted with regard to Plaintiff's strict liability claim premised on a marketing defect, Plaintiff's negligence claim insofar as it relies on *res ipsa loquitor*, and Plaintiff's breach of implied warranty of merchantability.  Defendant's Motion is denied with regard to the remainder of Plaintiff's negligence claim.  Plaintiff has thirty days to file an amended complaint that will cure the deficiencies identified in this Order with regard to the strict liability claim premised on a marketing defect and the breach of implied warranty of merchantability claim.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 11th day of April, 2013.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff, at present, has pled that the gun at issue was provided after the muzzle loader on another gun Plaintiff owned, which was also manufactured by Thompson, split.  (Compl. ¶ 4.)  Plaintiff did not plead that he had purchased this previous gun from Defendant, or that the gun at issue was provided specifically as replacement for the prior gun.